May it please the court, my name is Brian Maxey, Assistant City Attorney. I'm here on behalf of Police Officer Kevin Oshikawa Clay and the City of Seattle, the appellants. There are two primary issues that I'm hoping to address today. First, when a court is faced with differing inferences that can be drawn from an undisputed set of material facts, that court should reach and should resolve the issue of qualified immunity as a matter of law. Second, when an officer uses reasonable force to restrain an apparently resisting suspect, that officer should also receive qualified immunity. Let me ask you this, let's just sort of cut right to it because I think all of us looked at the video. The way I do things is I read the briefs first and then I looked at the video. And when I read the briefs, I actually expected that I was going to see more struggling going on. I couldn't see what you said in the briefs, I really couldn't see it in the video. So, because the officer is saying that he had to use force to control his head or whatever because he was struggling. But when I was looking at the video, his hands were on the car and I couldn't see them moving. I was expecting to see more of a struggle. And so, doesn't that just take us right to a tribal issue? No, it doesn't, Your Honor, and here's why. First of all, when you say you expected to see more struggling, I would agree. What was happening, though, is that Mr. Kita was holding his hands in towards his core. At that moment in time, Officer Oshikawa Clay was attempting to spread his arms out to actually move them. Well, yeah, that's what the officer is claiming. I agree. And if the jury believes the officer, then they can say that the officer, then they get into whether what he went to, whether that was excessive force. But what we're looking at, if you have to give all inferences to Mr. Clay. Mr. Kita. Mr. Kita. I'm sorry, Mr. Kita. I can't see, you know, he could have been doing that, but I can't see it from there. And Mr. Kita says he was compliant, and that's what it looks like. So why isn't that just a tribal issue? For several reasons. First of all, in terms of. Because I would have to resolve that fact. I don't believe that you do, because the only question this Court needs to resolve is whether Officer Oshikawa Clay reasonably perceived the circumstances and reasonably responded to them. You do not have to address the material issue of fact as to whether Mr. Kita was actually resisting. The question is, is it. Don't you think what the disc of the video described is one of the things we have to consider as to whether or not he reasonably perceived the fact? Absolutely. Both parties point to the video as the best evidence. In fact, in Scott v. Harris. It seems like your case comes down to, well, even if the police officer. Maybe it's almost like opinion evidence. His opinion was that resistance was greater than I might see on the video. That's a reasonable interpretation. Yes, and in fact, I believe this Court must take it from Officer Oshikawa Clay's perspective. No, that's totally wrong in terms of for purposes of summary judgment. Well, Your Honor, disputed issues of material fact need to be taken in the light most favorable to the plaintiff. Yes, but when you analyze use of force, that analysis comes from the perspective of a reasonable officer on the scene, not from Mr. Kita's perspective. And that's what the trial, but it's also, is there a dispute as to that? Let's just say that if the evidence was that Mr. Kita wasn't moving at all and he was compliant, did the officer have a right to give him the two head bumps on the car and then when he was down on the ground give him the head bumps there? If he was completely compliant, assume for a moment. Assuming that the answer is still yes, the officer had the authority to use that. If a person's completely compliant, then you can still give him a head bump? Let me explain why. You look at the totality of the circumstances. Right now we're focusing solely on what occurred on the hood of that car. What the court needs to consider is everything that led up to that. You have to consider that when Officer Oshikawa Clay arrived on scene, that he already knew that Mr. Kita had assaulted a woman. He'd done so brazenly in broad daylight. He knew there was a violent struggle at hand. When he approached, he saw Mr. Kita pacing back and forth in an agitated state. When he first got out of his car, he called to Mr. Kita. Mr. Kita ignored him, went around the car to a place of concealment. The officer did not know where he was. Excuse me, counsel. That's a disputed fact, is it not? Because Mr. Kita said he did not hear the officer when the officer first spoke to him and then afterwards he complied with everything the officer asked him to do, didn't he? That's Mr. Kita's argument. However, whether or not Mr. Kita... Well, there is a disputed question at that. I don't believe so because it's not material whether Mr. Kita actually heard the order. The order was issued, and from the viewpoint of a reasonable officer on the scene, he has the right to assume that Mr. Kita did hear that. He shows up, he's in uniform, he issues a loud, clear command, come here, he watches Mr. Kita. Well, that's a question of whether it's loud and clear. I mean, suppose, you know, your assertion doesn't make sense just because the officer spoke the word. I mean, suppose, you know, there was a tumultuous crowd, you know, all kinds of noise. He can still assume that the arrestee heard? I'm not saying that. I don't think you can make a flat statement like that. I mean, you know, that's one of the issues of fact. I mean, he's denying he heard it. I understand that. But again... How can you say you have to assume that he heard? An officer that is approaching a scene where there's a violent altercation and he needs to take action to effect a lawful arrest, that officer does not have the time to issue an order and then confirm whether that order has been heard. Now, I think we all agree that that's a good jury argument. The question is, is it a good summary judgment argument? But I need to, if Judge Shishima doesn't mind, I want to address the Monell claims because I'm confused on that, that it seems that you are tying the Monell claim entirely to that Officer Kida, if Officer Kida used the correct amount of force, then there's no Monell liability. If he did use force, then there is Monell liability? Essentially, if this court were to rule in Officer Oshikawa's favor on the first prong of a qualified immunity analysis, that his force is objectively reasonable, then the Monell claim falls. I know, but did you tie it to anything else? Because I've seen a lot of these cases, and usually Monell is tied, there can be a lot of times that the officer didn't do something right, but there's no Monell liability. You seem to be making those inextricable. I'm not hearing you allege, because it means it's a pattern or practice or a policy of doing something. Let's say the officer's wrong, but to show Monell liability, there has to be more than just the officer's wrong. They have a whole lot of officers. But the only thing that I'm seeing here is you are tying the Monell liability entirely to Officer Kida. It's tied to Officer Kida only if you find in favor of him. If you do not, then Monell is still in dispute, and it is not inextricably intertwined at all. But you didn't argue that at summary judgment, right? This is on a limited. You didn't argue any other reason that it should have been in your favor at the summary judgment level. There are many other arguments about the Monell claim at summary judgment. They just are not appealable as a matter of rights. So for the limited pendant jurisdiction that we're asking this Court to extend, it's simply the connection between the underlying claim and the Monell. It seems like you might have a conflict with the officer at some point. I'm confused because you're representing both the officer and the city, right? All right. But if you're going to throw the officer under the bus and then say even if you were, even if you exceeded the policy, then we still don't have a... I don't perceive that we're in any way throwing the officer under the bus. Both the city and Officer Chikawa-Clare are united on the fact that he did absolutely nothing wrong. He followed city policy. But if the jury says he didn't, then you're liable under Monell. Is that the position that you're taking? No. If the jury finds that there was an underlying constitutional violation by Officer O'Shikawa-Clare, then the plaintiff still bears the burden of showing that there is a policy, custom, or practice of the city that was a motivating force behind that constitutional violation. But you didn't deal with that on this summary judgment motion? You're just going to deal with that at trial? It was denied on summary judgment. It's not appealable. All right. Okay. Okay. All right. Do you want to save the balance of your time for rebuttal? I want to make one more point before I do that. Okay. And that simply is on the matter of inferences. I want to draw this Court's attention to Connor B. Hyman,  That's your 28-J letter, right? Correct. Yes, Your Honor. In that, the Ninth Circuit clearly said that a district court should decide the issue of qualified immunity as a matter of law when the material historical facts are not in dispute and the only disputes involving inferences may properly be drawn from those historical facts. The historical fact is in dispute here. In other words, whether the victim was struggling. That's a historical fact. Again, it is our position that that is not the relevant question when you are analyzing this report. If a historical fact, you know, is or is not in dispute. I understand from this conversation we have perhaps a disagreement as to whether there are disputed issues of material fact. We submit that there are none. And perhaps a perfect example of this is the Wilkinson v. Torres case. When the officer in that case believed that a van was running over his partner, he used lethal force to stop the driver of that car killing him. It turns out he was wrong. He made a mistake of fact. Officer Palacles... Well, I don't think he made a mistake of fact. From his perception, it is perfectly reasonable to believe what he did. Ultimately, in 20-20 hindsight, his partner was not in the way of that van. My point being... Well, it was a disputed fact. But the court found that it was... I wrote that case. Yes, Your Honor. But I think it was a disputed fact, whether he was in front of the van or not. Correct. Or had fallen to the side before. But anyway, go ahead. But nonetheless, in that case, Your Honor, was able to determine that his actions were objectively reasonable. I'll reserve the balance. Thank you. Okay, thank you. Good morning. Good morning, Your Honors. My name is Paul Fogarty. I represent John Keaton. Your Honors, it's hard to imagine how Mr. Keaton or any other civilian could have been more submissive and compliant in this situation. The court has... Well, I think you're both... The problem is that you're both making jury arguments here. Okay? All you have to show is there's a tribal issue. Yes, Your Honor. And so don't make a jury argument to me here in terms of that. If there's a tribal issue, then that doesn't mean you win at the end of the day. But we're looking at the video and, you know, if the appellant seems to say that we have to say that your client was struggling, and it seems to me your strongest argument is saying, well, looking at that, you can't see whatever the officer is saying. So a jury has got to decide do they believe the officer or do they believe your client. Yes, Your Honor. And compare that to the video. Yes, Your Honor. There's material issues of fact that are disputed all over the place. What's your response in terms of that analysis? What's the response to the case, you know, Mr. Maxey-Sykes and his 28-J letter about, you know... The Connell case? Yes. The Connell case, well, two things. One is they were undisputed. The facts were undisputed in Connell. Everyone agreed that there was a video that confirmed that the suspect had knowledge of taking an overpayment from the casino. The facts weren't in dispute. Maybe there were inferences that were, but there were no facts in dispute. Everything was apparently agreed or undisputed. The Connell case cited the Torres case, and the Torres case found disputed issues of fact. It was a probable cause case, but they went through the same analysis and found that the historical facts were disputed. Whether or not the officers, whether the suspect had been properly identified, whether the officers had knowledge that the suspect was in a gang, there was an issue. The officers said that they saw a gang sign from the suspect, but the video only showed one finger, and so the court couldn't see whether or not it was a gang sign or whether it was just pointing. So I believe that Connor actually supports a finding in this case that there's disputed material facts. Torres certainly does, because Torres is analytically the same as where we are today in this case. All right. Then as Judge Callahan asked, what is the disputed material fact here? In our case? In our case. Yes. Well, one, Mr. Kita denies that he was resisting, that his arms or body was taut, or that he was trying to... He was, as confirmed by the video, he was doing everything the officer told him to do. He had his hands on the car. The officer said, give me your hands. He raised his hand up. So that's one dispute, that there was no resistance here at all. Another dispute was compliance. He complied with all the orders. And there's a question about the first come here. Well, certainly by the time that Mr. Kita had his hands on the car, he was under control by the officer. And Mr. Kita denies that he was resisting and he was compliant. He denies he tackled anybody. He denies acting out of control, violently or aggressively. He denies locking his arms. He states that he was immediately cooperative. All this is confirmed by the video. Well, it isn't really. The video, to me, what you're both like taking, and I understand as advocates that you do that, but you're taking, you know, basically the position that the facts are undisputed, that your client was compliant, so therefore he should win on summary judgment. He's taking the fact that, well, that what officer that we have to accept looking at that, that the officer that your client was resisting and that, you know, because he was pulling back. That just only seems to underscore the disputed nature, not the undisputed nature. Yes, Your Honor. I think an argument I made in my brief is that even though it wasn't before the court, the court could have found as a matter of law that the force was excessive and that there was a constitutional violation, but agreed, agreed. I mean, it seems like at some point you both have, you know, you can grab defeat from the jaws of victory, too. All you have to show is a disputed fact at this point. Yes, and there's disputed facts all over the place. With respect to the force that was used, it wasn't Mr. Keating's position as it was, and he felt it. It was not a like, it wasn't a bop. It wasn't a slap. It was a punch in the back of the head the first time. So there's almost both sides have, which in the court, Your Honor, you have identified this. The video shows one thing. It seems like a jury does have to listen to Mr. Keating and Officer Clay to know whether or not, to determine whether or not Mr. Keating was resisting. Mr. Keating denies he was. So, you know, and the argument that the. . . Well, I mean, also in Officer Clay's favor, I mean, domestic violence is a very volatile situation, and what he saw, you know, I mean, your client has one side of the story, and, you know, I think when you look at, you know, this court recognized in Mattos that the volatility of situations involving domestic violence makes them particularly dangerous. So that's a factor weighing in Officer Clay's favor. But these are all, it just, the more that I listen to both of you, the more I'm hearing disputed facts, even though you both moved to the extreme corners. Yes, Your Honor. As a matter of curiosity, is there anything in the record to show that Mr. Keating suffered so many injuries inflicted by Officer Clay? I'm sorry, Your Honor, I didn't hear the last part of the question. Is there anything in the record to show that Mr. Keating suffered from the injuries inflicted by the police officer? Yes, Your Honor. In the record, and in the part of the summary judgment record, Mr. Keating states in his declaration that he was injured, he hurt his neck. He attached to his declaration a medical record, an MRI record that shows that Mr. Keating does have neck damage. And Mr. Keating in his declaration described his, the symptoms that he is and was experiencing. Thank you. I think the appellant's position that the officer's perception somehow overrides everything, so it has to be a reasonable perception. You just can't make up that someone was resisting and say that's your perception. You know, it could have been, we would all agree that Officer Clay's perception, if he had one, that Mr. Keating was trying to summon aliens to help him, we would all know that's not a reasonable perception. Well, but, you know, it could be a situation that, like I said when I read the briefs, if the fight was on here, if the video showed that the fight was on and that that was really going on, you know, fights don't look pretty, but that could be a situation where giving all inferences in favor of someone, you know, that the officer doesn't have to do what we would do from our chairs 20-20, you know, comfortably as we're sitting there and he's, you know, struggling for his life. And, I mean, I actually kind of thought I was going to see kind of an ugly fight there, and there can be situations where an ugly fight, even though in hindsight you say, well, why didn't you use this force, why didn't you use that? I mean, officers are entitled to end it quickly if that's what they need to do. They don't have to risk their lives, and that's essentially what he's arguing, but the video doesn't seem to show that kind of fight. I agree, Your Honor, it doesn't show that fight at all. And, you know, I've said this before, but the video and Mr. Keita's declaration shows a submissive and compliant, non-resisting citizen. So your position is that we should affirm the district court? Absolutely, Your Honor, yes. All right, did you have any additional comments? I really don't, Your Honor, thank you. Are there any additional questions from the panel? No, thank you. All right, thank you. Your Honor, officers don't have to wait for the fight to begin to try to preemptively resolve a potentially tense situation. We're very, very focused on what happened on the hood of this car that everybody's focused on. Was Mr. Keita resistant at that point in time? You've got to look at the totality of the circumstances here. There are many, many indicators that caused this officer reasonable concern. The fact that Mr. Keita walked behind the car, regardless of whether he heard or didn't hear, Mr. Keita looked at the officer, turned back, and proceeded towards the woman he had just assaulted. A reasonable officer wouldn't know whether he was retrieving a weapon, whether he was going to continue the assault, what was happening. When he finally did respond and come out from behind that car, he did so erratically. He's not focused on the officer. He's looking back over his shoulder. He's thrusting his hand into his pocket. At that point, a reasonable officer would know that this person might have a weapon, that if there was a handgun in the pocket, they could shoot through the pocket. If there was a knife, they could pull it out and attack the officer before the officer had the ability to respond. That's the way officers are trained. At that moment in time, Officer Oshikawa Clay could have used the force that he ended up using in this situation. He could have grabbed Mr. Keita. He could have done the armbar. He could have done the distraction technique. He could have drawn his firearm and forced him to the ground. It's the totality of the circumstances. When they did get to the car, for whatever reason, whether Mr. Keita was or was not actually resisting, this officer was not able to get Mr. Keita into the position he needed him to be in. He did not believe Mr. Keita was under control. There were too many risks at that point, so he changed tactics. This head slap, this distraction technique, this is not a blow that's designed to do harm. It is not designed to do anything other than get Mr. Keita off balance so that the armbar technique to the ground can be executed. The question is not just the design. The question is what happened. You can't represent that he went exactly according to the design. You don't know that. The record doesn't show that. The use of force is never clinical. It's never as easy as you hope when you're with a different partner. Things evolve differently. Our point here is that these actions by Officer Ishikawa Clay were within the realm of reasonable. He had a situation. He did his best to resolve it. An officer in these tense and uncertain circumstances, they get to make mistakes. That's what Graham tells us. That's what Saucier tells us. They get to make mistakes of fact. If a reasonable officer misperceives that a suspect is likely to fight or flee, and he uses a higher level of force than is objectively necessary in 20-20 hindsight, he gets to be wrong about that. He gets to make that mistake. Similarly, in the qualified immunity analysis, the officer gets to make mistakes of law and fact and applying the law to the facts, what the actual contours of the law are. We believe that in this case, this court should find for Officer Ishikawa Clay on the first prong of qualified immunity. If the court does not reach that, there is still the second prong. Mr. Kita has pointed to no case on point that would put the constitutional issue here beyond debate. All of the cases in this circuit, Jackson, Forrester, Brooks, although that has a convoluted history, but even in Brooks, the court went through this circuit's opinions and pointed out the distinction between severe uses of force and minimal intrusion. We submit that this was a minimal intrusion. All right. Thank you both for your arguments. Both of these matters will stand. All the matters will stand submitted. This court will be in recess until 1030.
judges: Nelson, Tashima, Callahan